ORIGINAL

U.S. DISTRICT COURT
FILED
AUG 0 1 2017
S.D. OF N.Y.

Approved:      _____
               LOUIS A. PELLEGRINO                DOC #____ ____
               Assistant United States Attorney

Before:        HONORABLE GABRIEL W. GORENSTEIN
               United States Magistrate Judge          17 MAG . 5790
               Southern District of New York

- - - - - - - - - - - - - - - - x
                                 :    **SEALED COMPLAINT**
UNITED STATES OF AMERICA         :
                                 :
      - v. -                     :    Violations of
                                 :    18 U.S.C. §§ 1349,
MICHAEL RIZZI and                :    1344 and 2.
EDWARD MONAHAN,                  :
                                 :
               Defendants.       :
                                 :    COUNTY OF OFFENSE:
                                 :    NEW YORK
                                 :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          CHRISTOPHER BASTOS, being duly sworn, deposes and says
that he is a New York City Police Detective ("NYPD"), and a Task
Force Officer with the Department of Homeland Security, Homeland
Security Investigations ("HSI"), and charges as follows:

                          COUNT ONE
               (Conspiracy to Commit Bank Fraud)

          1.   From at least in or about September 2015, up to
and including at least in or about May 2017, in the Southern
District of New York and elsewhere, MICHAEL RIZZI and EDWARD
MONAHAN, the defendants, and others known and unknown, willfully
and knowingly did combine, conspire, confederate, and agree
together and with each other to commit bank fraud, in violation
of Title 18, United States Code, Section 1344.

          2.   It was a part and an object of the conspiracy
that MICHAEL RIZZI and EDWARD MONAHAN, the defendants, and
others known and unknown, willfully and knowingly, would and did

                               1

execute and attempt to execute a scheme or artifice to defraud a
financial institution, and to obtain moneys, funds, credits,
assets, securities, and other property owned by and under the
custody and control of a financial institution, by means of
false and fraudulent pretenses, representations, and promises,
in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349)

COUNT TWO
(Bank Fraud)

3.    From at least in or about September 2015, up to
and including at least in or about May 2017, in the Southern
District of New York and elsewhere, MICHAEL RIZZI and EDWARD
MONAHAN, the defendants, willfully and knowingly, did execute
and attempt to execute a scheme or artifice to defraud a
financial institution, and to obtain moneys, funds, credits,
assets, securities, and other property owned by and under the
custody and control of a financial institution, by means of
false and fraudulent pretenses, representations, and promises,
to wit, RIZZI and MONAHAN submitted false documentation to a
bank falsely claiming that RIZZI was selling property to MONAHAN
as part of an "arm's length" transaction.

(Title 18, United States Code, Sections 1344 and 2.)

The bases for my knowledge and for the foregoing
charges are, in part, as follows:

4.    I am a Task Force Officer with HSI's El Dorado
Task Force and a Detective with the NYPD.  I have personally
participated in the investigation of this matter.  This
affidavit is based upon my personal knowledge, my review of
documents, and my conversations with law enforcement agents and
other people.  Because this affidavit is being submitted for the
limited purpose of establishing probable cause, it does not
include all of the facts that I have learned during the course
of my investigation.  Where the contents of documents and the
actions and statements of others are reported herein, they are

2

reported in substance and in part, except where otherwise
expressly indicated.

       5.   Through my discussions with other law enforcement
agents, discussions with bank officials, and my review of bank
records, mortgage files, state and federal records,
investigatory files, and other information, I have learned the
following:

       a.   On or about July 19, 2007, MICHAEL RIZZI,
the defendant, and a former NYPD Police Officer, obtained a
mortgage loan (the "Mortgage") in the amount of $368,000, using
a particular property located on Lafayette Avenue, Staten
Island, New York as collateral (the "Rizzi Property").  The
loan, for the purchase of a primary residence, was originated by
a mortgage banker and was subsequently acquired by a bank
("Bank-1") on or about August 15, 2007.

       b.   Over time, RIZZI stopped paying the Mortgage
and in or about December 2009, the Mortgage fell delinquent.

       c.   In 2015, RIZZI contacted Bank-1's Loss
Mitigation Department and requested a short sale due to
financial hardship (the "Short Sale").[1]  According to Bank-1's
records, Bank-1 indicated that the Short Sale was required to be
an "arm's length" transaction, meaning that the buyer could not
have any personal, familial, or business connections with RIZZI.

       d.   According to real estate listings, the Rizzi
Property was listed for sale on or about October 19, 2015 by a
realty company.  The proffered list price was $439,000.

       e.   On or about November 5, 2015, RIZZI and
EDWARD MONAHAN, the defendant, executed a purchase contract (the
"Purchase Contract") in which RIZZI offered to sell the Rizzi
Property for $350,000 to MONAHAN.  According to mortgage
records, MONAHAN was represented by a Manhattan-based loan
originator, who created a final "buyer's" loan application
package from information provided by MONAHAN.  In a rider

---

[1] Based on my training and experience, I know that a short sale
is a sale of real estate in which the net proceeds from selling
the property will fall short of the debts secured by liens
against the property.

attached to the Purchase Contract, which was expressly made a part of the Purchase Contract and separately signed by RIZZI and MONAHAN, RIZZI and MONAHAN affirmed that "Seller and buyer each represent that the sale is an 'Arm's Length Transaction' and the seller and buyer are unrelated to each other by family, marriage or commercial Enterprise."

       f.    Both RIZZI and MONAHAN also signed a "Short Sale Contract Addendum," dated November 5, 2015, in which they each "acknowledge[d] and agree[d] that the Subject Property must be sold through an Arms Length Transaction — Mortgagors and mortgagees must adhere to ethical standards of conduct in their dealing with all parties involved in a Short Sale transaction. The Short Sale must be between two unrelated parties and be characterized by a selling price and other conditions that would prevail in a typical real estate transaction.  No party to this contract is a family member, business associate, or shares a business interest with the mortgagor (Sellers)."

       g.    On or about December 22, 2015, Bank-1 wrote RIZZI to inform him that Bank-1 had approved the Short Sale. Bank-1 noted that a short sale "allows you, the borrower/seller, to sell your home for less than the amount owed on your mortgage, and releases your obligation to repay your primary mortgage balance."  Bank-1 also reiterated the conditions of the sale, including: "The short sale must be an arm's length transaction . . . This means the seller and buyer must be unrelated to each other by family, marriage or commercial enterprise. If it's determined that the sale is not an arm's length transaction, this approval will be null and void."

       h.    The closing for the Subject Premises occurred on or about March 24, 2016.  According to the form which documented the closing (the "HUD Form"), the "buyer," MONAHAN, put down a $17,500 deposit in "earnest money."

       i.    At approximately the same time, according to bank records, on or about March 24, 2016, RIZZI received a check containing $10,000 in Home Affordable Foreclosure Alternatives ("HAFA") relocation assistance funds.

       6.    Through my discussions with other law enforcement agents, discussions with bank officials, my review of social

media accounts, investigatory files, business and banking
records, and other information, I have learned the following:

        a.   In the "buyer's" mortgage application for
the Rizzi Property, EDWARD MONAHAN, the defendant, submitted a
bank statement which appeared to show that he had sufficient
funds to make a down payment on the purchase of the Rizzi
Property.  However, according to bank records from Rizzi's bank
("Bank-2"), a fake account statement appears to have been
created purporting to be from Bank-2, so that MONAHAN could
receive approval from his mortgage company to purchase the
Subject Premises.  In particular, someone appears to have taken
an account statement from Bank-2 and superimposed MONAHAN's name
at the top of RIZZI's bank statement, and made additional
alterations, thereby making it look to the mortgage company that
the funds in RIZZI's account in Bank-2 belonged to MONAHAN.

        b.   RIZZI's true account statement from Bank-2
for the period November 11, 2015 to December 10, 2015, shows
that he withdrew $17,500 from Bank-2.  Other bank records from
Bank-2 show that on or about November 13, 2015, RIZZI withdrew
that amount in the form of a bank check.  In other words, it
appears that RIZZI supplied MONAHAN with the earnest money down
payment referenced in the HUD Form, *see supra* ¶ 6(h), so that
MONAHAN could "purchase" the Subject Premises from RIZZI.

        c.   In addition, contrary to the repeated
representations discussed *supra,* concerning the "arm's length"
nature of the Short Sale, RIZZI and MONAHAN appear to be long-
time friends and business partners.  For example:

        i. According to bank account records, RIZZI and
MONAHAN are partners in Nitecap Entertainment
Corp., which operates Nitecap Megastore, a
Staten Island adult store and smoke shop.

        ii.  Based on my review of bank records, on at
least one occasion, in 2013, RIZZI wrote a
check to MONAHAN, almost three years before the
Short Sale transaction occurred.

        iii.  MONAHAN's You Tube video page features
RIZZI prominently, in videos that were posted
years before the Short Sale, including:

a. "UFC Fighter runs from paparazzi,"
dated October 17, 2007;

b. "Rizzi on Carbs," dated November 19,
2007; and

c. "Giants vs Packers in Staten Island,"
dated January 20, 2008;

iv.   MONAHAN's publicly available Facebook page
also features a photograph of two individuals,
who based on my experience investigating this
case and my review of photographs in law
enforcement databases, appear to be RIZZI and
MONAHAN posing together at a costume party on
November 1, 2014.

b.     In addition, RIZZI appears to have
maintained control of the premises following the Short Sale, and
never departed the Rizzi Property.  For example, following the
Short Sale, RIZZI sent two letters to credit reporting agencies,
on May 9, 2016, and June 16, 2016, in which he listed the Rizzi
Property as his return address, even though the Rizzi Property
is not RIZZI's primary residence.

c.     I have also observed RIZZI and his vehicle
at the Rizzi Property on more than one occasion after the close
of the Short Sale.  For example, on May 19, 2017, I observed and
photographed RIZZI carrying hand tools and making repairs to the
exterior stonework on the outside wall of the Rizzi Property.
Based on my review of law enforcement databases, I know that
Rizzi travelled from Brooklyn to the Rizzi Property by using the
Veranzano Bridge.

7.    Through my conversations with Bank-1 officials
and my review of investigatory files, I have learned that, as a
result of the Short Sale, the Subject Premises were sold at a
discount, and Bank-1 suffered in excess of $250,000 in losses.

WHEREFORE, I respectfully request that warrants be
issued for the arrest of MICHAEL RIZZI and EDWARD MONAHAN, the

defendants, and that they be arrested and imprisoned, or bailed,
as the case may be.

CHRITOPHER BASTOS
NYPD Detective
Task Force Officer
U.S. Department of Homeland Security,
Homeland Security Investigations


Sworn to before me this
1st day of August, 2017.

THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

7