1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                      17 Cr. 00533 VEC

5   MICHAEL RIZZI,

6                    Defendant.

7   ------------------------------x

8

9                                        July 24, 2018
                                         2:00 p.m.
10

11

12  Before:

13                  HON. VALERIE E. CAPRONI,

14                                         District Judge

15

16                      APPEARANCES

17

18  GEOFFREY S. BERMAN,
         United States Attorney for the
19       Southern District of New York
    LOUIS ANTHONY PELLEGRINO,
20       Assistant United States Attorney

21

22  JAVIER ALBERTO SOLANO,
         Attorney for defendant Rizzi

23

24

25

1    (In open court)

2    (Case called)

3    THE COURT:  Please be seated, everybody.

4    Okay.  Mr. Solano, I don't know if you have been in

5    contact with your co-counsel in this case?

6    MR. SOLANO:  I have, your Honor.

7    THE COURT:  You know that we got into a discussion

8    yesterday over what the deal was surrounding the transfer, the

9    short sale basically.  What is the story with the property?

10    MR. SOLANO:  Yes, I did.

11    I can tell the court, first I was here yesterday, your

12    Honor, I actually came in a little late, but I heard part of

13    the discussion and what had been going on.

14    I could tell the court that based on the conversations

15    I had with Mr. Rizzi, that the only deal that there was with

16    respect to the property was that Michael Rizzi was going to, in

17    effect, give the property to Michael Rizzi for the short sale.

18    THE COURT:  Give it to?

19    MR. SOLANO:  Sorry.  To Edward Monahan for the short

20    sale and provide to him the down payment for that purchase.

21    My understanding is that other than that, there was no

22    financial arrangement whereby Mr. Rizzi was either going to

23    provide money to pay the mortgage, was going to receive any

24    compensation from any of the rent rolls.

25    My understanding was that because of the way the rents

1    were laid out, that the rents were going to be able to pay for

2    the mortgage itself, and whatever proceeds, if any, were going

3    to go to Edward Monahan, who is now going to be the owner of

4    the property.

5            THE COURT:  So your client's position is he gave a

6    half million dollar piece of property to Monahan, gave it to

7    him with $18,000 to boot?

8            MR. SOLANO:  I think I want to make sure we're both on

9    the same page with respect to that.

10           My understanding, your Honor, was that the house was

11   appraised by Wells Fargo at $368,000 at the time of the short

12   sale.  The property was then sold for $350,000, meaning that at

13   the time that Mr. Monahan received possession of the property,

14   there was equity in a sense, in the sense of $18,000.

15           The $500,000 number that your Honor's quoting, I don't

16   know if that is a number now that is what the property is

17   valued at, but certainly at the time of the short sale, my

18   understanding is Wells Fargo's appraisal was $368,000.  In

19   essence, what Mr. Rizzi gave Mr. Monahan was $18,000 of the

20   down payment, which in effect became the equity of the home.

21   That is the only way I can answer that.

22           THE COURT:  Plus the 18,000 in equity?

23           He gave him cash, and what he ended up with was a

24   piece of property, under Wells Fargo's theory, under that

25   appraisal worth $18,000 more than the mortgage?

1          MR. SOLANO:  Correct.  If you're talking about

2    doubling not only the equity at 368, but also the appraisal --

3    the down, yes, it is a total of 36,000 and change.

4          THE COURT:  And your client says he has nothing to do

5    with the fact that somebody who lives in the building now is a

6    half owner of it?

7          MR. SOLANO:  When your Honor says, "he has nothing to

8    do with that fact," I will say this, Judge.  My understanding,

9    and perhaps Mr. Rizzi, and I think he was prepared in some way

10   to discuss this with your Honor if your Honor cared to discuss

11   it, Mr. Rizzi had a relationship with one of the tenants, and

12   if you don't mind if I go back a second because I think it is

13   important to lay out how this happened.

14         In 2007 when Mr. Rizzi bought this property, he was

15   married and he was going through problems with his wife.  Part

16   of the purchase of this property was because he was separating,

17   going through marital problems and he wasn't sure whether or

18   not it was going to survive or he would go on his way.

19         Part of the reasons he purchased this property was for

20   him to live in and make some rent rolls so he could cover the

21   mortgage, and perhaps if he continued to be separated, have a

22   place for his kids as well.  In fact, during a long period of

23   that time in those first couple of years, that is what, in

24   fact, happened, Mr. Rizzi was living there.  His family and

25   kids were coming over, and they sort of lived separate.  At

some point during that time he reunited with someone he knew

since he was 13 years' old, who ends up being now the tenant

and ultimately the person who gets the property transferred to

her.

Mr. Rizzi during that time begins a relationship with

her, and during that time, your Honor, so I can get these dates

correct, about 2010 to 2011 is when he starts to have these

financial problems with paying the rent, and Mr. Rizzi put in

his letter the reasons why he had issues with the tenants, and

because of that, he missed many payments and that is what

started the foreclosure proceedings.

It is important on a separate issue that I am clear as

can be about that because I know the government at times and

even the probation report made it seem like the motivation for

the short sale was because there was, Mr. Rizzi was claiming he

was having financial hardships.  That is certainly not the case

because in 2015, he wasn't having financial hardships, as the

court knows already in 2010 to 2011.

Because these foreclosure proceedings had begun by

2015, at the time the short sale occurs, there is really no

amount of money that Mr. Rizzi can provide to Wells Fargo to

get the house other than I assume buying it outright, and I

think at that point in interest and fees and everything else

they were claiming, it was something in the neighborhood of

$467,000.

1        So I just want to make that aside because I want it to

2   be clear that the motivation in doing this wasn't because he is

3   trying to claim he couldn't afford it.  Back in 2010, 2011 when

4   he was trying to modify the loan, he could not afford it at

5   that time.  Needless to say, I'll get back to the person that

6   the property was transferred to.

7        So in 2010, 2011 when he begins this relationship, it

8   continues for some time.  Mr. Rizzi actually has the woman move

9   in with him.  She moved from Tampa or some other jurisdiction

10  -- Holiday, Florida -- outside of Tampa, and also brings I

11  believe her mother as well, and part of the reason I guess and

12  part of the motivation for him not wanting this house to go to

13  anyone is because he I guess felt compelled, felt guilty,

14  didn't want her to be displaced because the house was being

15  foreclosed.

16       So the relationship and who she is is someone that he

17  had a relationship with for a very long time, and so at the

18  time that I think the transfer occurred --

19            THE COURT:  Which transfer?

20            MR. SOLANO:  The transfer --

21            THE COURT:  The short sale?

22            MR. SOLANO:  Not the short sale.  I apologize.

23       The transfer of 50 percent from Monahan to this other

24  person was two-fold, because Mr. Monahan had never paid back

25  this $18,000 down payment that Mr. Rizzi had provided for him

1    to purchase the property in the first place, and I believe that

2    had always been the agreement.  I am giving you this down

3    payment, and at some point, whenever you can, pay it back to

4    me.  That was it.  It wasn't like he was going give it to him

5    out of the goodness of his heart.  He was expecting that back.

6            Since that hadn't been done, my understanding is that

7    that, the fact he had not given Mr. Rizzi back this $18,000 as

8    well as Mr. Rizzi's I guess feelings that he had brought this

9    woman to live in New York and had displaced her, a single

10   mother, he asked Edward Monahan with respect to the $18,000 you

11   owe me, instead of paying me the $18,000 back, transfer 50

12   percent of the property to her.

13           My understanding also with respect to that, your

14   Honor, is that this tenant for all those years, it is not again

15   just out of the goodness and kindness of everybody's heart, my

16   understanding is she did act in a sense as a super because she

17   cleaned, she made sure everything was proper and right and took

18   care of the property.

19           Part of that was for the services she provided in that

20   sense, and ultimately I believe the thinking was to also,

21   because at this point if she is transferred just 50 percent of

22   the property and no debt, right, she essentially has gotten all

23   the equity and no responsibility, and I believe the

24   understanding was at some point she was going to try to get a

25   second mortgage on the home so that she could also be

1    encumbered as well as fix up the property.  That is my

2    understanding, your Honor, as to what happened, what the

3    arrangement was, and let me just say this one final thing, your

4    Honor.

5         I don't believe that the second part, meaning the

6    transfer of the property, was part of any original arrangement

7    between Mr. Monahan and Mr. Rizzi.  In other words, at the time

8    the property was transferred during the short sale, it was

9    simply you keep the house, Ed, here is the money for the down

10   payment, give me the down payment back, and that is it.

11   Later on the second part of it came to life.

12        THE COURT:  Even under that scenario, assuming that

13   were credible, there was an arrangement which was he would

14   repay the down payment?

15        MR. SOLANO:  Yes.

16        THE COURT:  There was an arrangement from the get-go?

17        MR. SOLANO:  Yes.

18        THE COURT:  The PSR reflects your client is a

19   one-third owner of Night Cap Entertainment?

20        MR. SOLANO:  Yes, your Honor.

21        THE COURT:  He did not disclose it during the PSR

22   process or it didn't make it into the PSR what he receives as

23   president of Night Cap.

24        (Off-the-record discussion)

25        MR. SOLANO:  $52,000, your Honor.

1          THE COURT:  Per year?

2          MR. SOLANO:  Correct.

3          THE COURT:  Even when he is in jail?

4          MR. SOLANO:  Correct.

5          THE COURT:  And the PSR reports that your client

6   transferred his ownership of the property at 34 Beach Avenue to

7   his wife.  What consideration was paid for that transfer?

8          THE DEFENDANT:  Nothing, your Honor.

9          MR. SOLANO:  No consideration?

10         THE COURT:  She just you just got the property out of

11  your name?

12         THE DEFENDANT:  My credit was bad because --

13         THE COURT:  Mr. Rizzi, I recommend that you not talk.

14  If you want to say something, talk to your lawyer.  Getting rid

15  of property does not improve your credit rating.  If anything,

16  what it does, it puts it beyond the reach of the government

17  when they're looking for property to forfeit.

18         Mr. Solano, have you and your client read the

19  presentence report, dated May 4th, 2018?

20         MR. SOLANO:  We have, your Honor.

21         THE COURT:  Have you discussed it with each other?

22         MR. SOLANO:  I have, your Honor.

23         THE COURT:  Mr. Rizzi, did you read the presentence

24  report?

25         THE DEFENDANT:  Yes, I did, ma'am.

1      THE COURT:  Did you discuss it with your lawyer?

2      THE DEFENDANT:  I did.

3      THE COURT:  Are there any objections to the report?

4      MR. SOLANO:  The only objection is there is a factual,

5  just one minor point where it says Mr. Rizzi --

6      THE COURT:  What paragraph?

7      MR. SOLANO:  Hold on a second.  (Pause)

8      (Off-the-record discussion)

9      MR. SOLANO:  I had it marked, your Honor.

10      THE COURT:  What is the issue?

11      MR. SOLANO:  The issue is just simply, your Honor,

12  that the PSR stated that Mr. Rizzi requested a short sale from

13  Wells Fargo, and it wasn't the case.  It certainly doesn't

14  change anything ultimately, but it was that Wells Fargo offered

15  him the ability to do a short sale.  I am just trying to find

16  that paragraph, your Honor.

17      THE COURT:  On Page 28 it says in 2017 Wells Fargo

18  Bank offered a short sale on the property.  That is Paragraph

19  28, Page 8.

20      MR. SOLANO:  Page 28, your Honor?

21      THE COURT:  Paragraph 28, Page 8.

22      MR. SOLANO:  Got it!  I'm sorry.  Judge, I don't know

23  if it was maybe in the government's submission.  In some

24  submission I read it appeared that the allegation was that

25  Mr. Rizzi was the one that contacted the bank to do the short

1    sale.  It looks, based on that, that is correct, it was the

2    Wells Fargo offered the short sale.

3                THE COURT:  Okay.

4                MR. SOLANO:  I don't think it matters, your Honor.

5                THE COURT:  Okay.  The presentence report, do you have

6    any other objections to the report?

7                MR. SOLANO:  No, your Honor.

8                THE COURT:  The presentence report will be made part

9    of the record in this matter and placed under seal.  If an

10   appeal is taken, counsel on appeal may have access to the

11   sealed report without further application to this Court.

12                I received a submission from the defense, dated July

13   10th, that included a number of letters from family and friends

14   and a letter from Mr. Rizzi.  Thank you for your letters.  I

15   read all the letters.  I also received a letter from the

16   government, dated July 19th.

17                The next step is the guidelines calculation.  For

18   those of you who are here to support the defendant, this will

19   sound like gobbledegook, but please bear with me.  The

20   defendant pled guilty to one count of conspiracy to commit bank

21   fraud.  The presentence report reflects a guidelines level of

22   9, criminal history history III, which yields a guideline range

23   of 8 to 14 months and a fine range of 2,000 to 20,000.

24                I find the correct guidelines calculation is as

25   follows:  I start with conspiracy guideline which is 2X1.1.

1   That directs me to the guideline for the offense that was the

2   goal of the conspiracy, which in this case is bank fraud.  The

3   guidelines for fraud is 2B1.1.

4        Because the maximum penalty for bank fraud is over 20

5   years under 2B1.1(a)(1), the base offense level is 7.  The

6   total loss to the bank from the fraud in the short sale was

7   between 15,000 and 40,000 so that is plus IV.  That brings a

8   total to 11.  Mr. Rizzi gets credit for pleading guilty for

9   acceptance of responsibility, and that brings the adjusted

10  offense level to 9.

11       Mr. Rizzi has a conviction in 2012 for promoting

12  gambling in the second degree.  That is one criminal history

13  point.  He was convicted in 2017 of money laundering in

14  connection with running prostitutes.  That is three criminal

15  history points, for a total of four criminal history points.

16  Four criminal history points puts him in Criminal History

17  Category III, Level 9.  Criminal History Category III yields a

18  guideline range of 8 to 14 months and a fine of 2000 to 20,000.

19       Are there any guideline arguments I have not

20  addressed, Mr. Pellegrino?

21       MR. PELLEGRINO:  No, your Honor.

22       THE COURT:  Mr. Solano?

23       MR. SOLANO:  No, ma'am.

24       THE COURT:  The defendant argues that he is entitled

25  to a downward departure under 5K2.0 because of the delay in

1    bringing this case constitutes a missed opportunity for this

2    charge to have been brought with a money laundering charge,

3    which may have resulted in a lower total sentence than whatever

4    I might impose today.

5         Would the government like to be heard on that?

6         MR. PELLEGRINO:  Certainly, your Honor.  We disagree

7    with that characterization.  We don't think there is a missed

8    opportunity present here.  The defendant was arrested and

9    charged in May 2016 for the underlying money laundering,

10   prostitution scheme.  It was only at that time that the bank

11   fraud first came to light.  That was in connection with a

12   search warrant that was executed on the day of the arrest.

13        Information was found on the defendant's computer and

14   elsewhere that suggested there might be some irregularities

15   regarding the mortgage of the subject property, but at that

16   time, of course, no one knew whether an actual crime had been

17   committed, so an investigation commenced regarding those

18   issues.

19        That investigation took from approximately May 2016 to

20   August 2017.  I would submit that that amount of delay is not

21   unusual for a financial case in which subpoenas were sent.  The

22   bank was asked to investigate to determine what had happened

23   regarding the short sale.  It is not a situation that the bank

24   called to our attention.  It was one that we called to the

25   bank's attention.  So they had to investigate.  We waited for

1    subpoenas and information to come back in response to those

2    subpoenas.  As I said in our submission, we submitted to the

3    defense more than 11,000 pages of financial records that we

4    located, and a charging decision was made.

5              Under those circumstances and under the case law, we

6    would suggest it is not a missed opportunity.  In fact, it is a

7    totally different case.  Although the property at issue

8    overlaps, there was connection between the property and the

9    prostitution case, certainly there is connection between the

10   property and charges brought here.  It is an entirely different

11   charge and it is appropriate for the court to consider it

12   separately.

13             In addition, as the PSR pointed out and as we pointed

14   out in our submission, Judge Amon granted a variance, so it is

15   impossible to know what the court might do if both charges were

16   before the court in the Eastern District now, but our belief is

17   given more information has come out since the original charges

18   were filed in the money laundering issue, a variance would be

19   unlikely, and as the PSR suggested, if you add an 8 to 14 month

20   potential guidelines sentence at issue here to the 15 months

21   that Judge Amon gave in the underlying case, that still would

22   be within the zone of what Mr. Rizzi would have faced if he had

23   been indicted and charged on all of those charges at the same

24   time in front of Judge Amon.  For those reasons, we suggest no

25   variance is appropriate, that the sentence should run

1    consecutively, and we have suggested a guideline sentence of 8

2    to 14 months, as we said in our submission.

3              THE COURT:  Mr. Solano.

4              MR. SOLANO:  Yes, your Honor.

5         For the most part, I will rely on the submission I put

6    forth.  Part of the difficulty in this missed opportunity case

7    and I think that was addressed by many of the circuits, as a

8    defendant you will never know in many respects.  One of the

9    things the court looks at, it looks at things that raises --

10   one of the quotes was, raises a suspicion there was some sort

11   of delay or missed opportunity.

12        The only thing I can point to, your Honor, and I

13   submitted to the court based on production given to me by the

14   government was a letter from Wells Fargo in July of 2017 when

15   at that point, and that was in apparent response from Detective

16   Myles Mahady from the New York City Police Department, which

17   appears to have been Mr. Mahady, Detective, appeared to have

18   reached out to Wells Fargo with respect to the property.

19             THE COURT:  2017 or 2016?  He was charged in 2017.

20             THE DEFENDANT:  2017.  I was charged in 2016.

21             THE COURT:  In this case?

22             MR. SOLANO:  2016, yes, your Honor.  I apologize.  In

23   2016, in other words, approximately two months after Mr. Rizzi

24   was arrested on the Eastern District case, it appears that at

25   least from the position of Wells Fargo, that there was

1   fraudulent activity in this sale.

2           Now, I don't know how long it takes the government to

3   investigate it, and perhaps that is all true.  I will never

4   know.  I think the thing that is the most telling, the most

5   interesting, potentially coincidental is the timing of the

6   arrests on the case.  Mr. Rizzi, as the court knows, was

7   sentenced by Judge Amon to 15 months of incarceration followed

8   by four months of home confinement.  He was allowed to

9   self-surrender on August 1, which he did so without incident.

10          The moment he surrenders to FCI Loretto, within 24 or

11  30 hours or so he is already being brought back to the Eastern

12  District, to the Southern District, and he ultimately ends up

13  in the MDC on these charges.  I don't know how to answer the

14  question whether or not it is coincidental, whether or not it

15  was in some way purposeful.  Obviously, what I will argue later

16  on with respect to how Mr. Rizzi has now needed and had to

17  spend the last 12 months in a maximum security prison,

18  certainly he is prejudiced in that sense.

19          I made other arguments to the court what I believe how

20  he was prejudiced.  I believe if there wasn't this delay, he

21  would have been a Category II instead of Category III.  That

22  would have changed his guideline range 8 to 14 to 6 to 12.

23  There would be a grouping analysis.  I don't disagree with the

24  analysis of the Probation Department with respect to the

25  grouping analysis and whether or not that same analysis will be

1  in the conspiracy to commit bank fraud along with the money

2  laundering count would be still more than Judge Amon gave.

3          It is important to know.  In that case where Judge

4  Amon agreed to the guideline range that she did, a big part of

5  that was the enhancement for victims.  I know the court might

6  not be well aware of the facts.  It was an escort service

7  Mr. Rizzi was running and although, technically speaking, and

8  Judge Amon in many -- not so many words said this, technically

9  speaking, they are victims because they were transported.  So

10  because of that, she enhanced it, and the guideline range

11  became the guideline range it was, but clearly in her variance

12  and what she stated on the record is factually she doesn't

13  believe they were victims, in the classic sense of the word is

14  what I mean.

15          I don't necessarily know and I have argued to the

16  court all these assumptions I make about what Judge Amon would

17  do are speculative.  What I am saying I guess is the missed

18  opportunity that Mr. Rizzi suffered is not -- he didn't have

19  the ability to make these arguments at the same time.  He

20  didn't have the ability to make maybe perhaps different

21  arguments to Judge Amon in the Eastern District case.  At least

22  in those, in that sense he missed those opportunities as well.

23          Based on those, your Honor, I believe there was a

24  missed opportunity which was caused in the delay, that caused

25  Mr. Rizzi at a minimum, at a minimum having to serve twelve

1   months in the MDC as opposed to FCI Loretto where he was sent.

2          For that, I ask your Honor consider a variance.

3          THE COURT:  Do you believe it was bad faith on the

4   part of the government?

5          MR. SOLANO:  I don't believe there was bad faith on

6   the part of the United States Attorney's Office, no.  I believe

7   it was -- I believe that given all the factors I laid out, the

8   relationship that Mr. Rizzi had in the past with this police

9   officer and judge -- I keep saying the coincidence and timing

10  of how he was arrested and when he was arrested, I believe it

11  is at least prima facie evidence there was on the part of the

12  Police Department.

13         THE COURT:  Do you want a hearing on that?

14         MR. SOLANO:  What is that?

15         THE COURT:  Do you want a hearing on that?

16         MR. SOLANO:  I don't, your Honor, no.

17         THE COURT:  Mr. Pellegrino, do you want to say

18  anything further?

19         MR. PELLEGRINO:  No, your Honor.  Thank you.

20         THE COURT:  The case law that was cited indicates that

21  for missed opportunity to click in, you need to have either a

22  delay that is the result of bad faith or was longer than a

23  reasonable amount of time for the government to have diligently

24  investigated the new crime, something that takes the length of

25  the investigation out of the heartland.

1    I don't see any evidence of bad faith.  Did this

2    investigation take longer than necessary?  The defendant argues

3    the government knew of the fraud around the time of his arrest

4    in May of 2016, and maybe there was some correspondence between

5    the Police Department and Wells Fargo later than that.  While

6    there is no doubt this investigation could have been done

7    faster, it could have also gone slower, as evidenced by all the

8    questions I had about what the real facts behind this

9    transaction were.

10    In any event, 15 months for a bank fraud investigation

11    is not outside the heartland.  The defendant is not entitled to

12    a downward departure on a missed opportunity.

13    In any event, had this case been charged at the same

14    time as the money laundering case, it could be that Judge Amon

15    would not have varied down.  It could be she may well have

16    concluded that a guidelines range of 37 to 46 months was not

17    longer than necessary to achieve the goals of sentencing, had

18    she known, in addition to running a prostitution operation and

19    engaging in money laundering, Mr. Rizzi was at the same time

20    engaged in bank fraud, but we don't know that.

21    So I have to deal with the case that is in front of

22    me.  Are there any factual issues in play beyond the ones we

23    have already discussed?

24    MR. PELLEGRINO:  No, your Honor.

25    THE COURT:  Mr. Solano?

1          MR. SOLANO:  No, your Honor.

2          THE COURT:  Mr. Pellegrino, would you like to be heard

3     on sentencing.

4          MR. PELLEGRINO:  Your Honor, we have discussed it at

5     length and we are happy to rest on our submission.  Unless the

6     court has questions, I am happy to address those.

7          THE COURT:  Okay.  Mr. Solano, would you like to be

8     heard?

9          MR. SOLANO:  Yes, your Honor.

10         Your Honor, when I'm confronted with an issue of what

11    to recommend or ask a court, I take it seriously.  What I mean

12    by that, I actually try to put myself in the position of a

13    court and say what really would be an appropriate sentence and

14    try to take myself away from being my client's advocate and try

15    to look at what would be just.

16         The way I look at it in Mr. Rizzi's case right now, I

17    ask myself a few questions.

18         THE COURT:  Can I interrupt you.  There was something

19    I omitted to ask before I let anything talk.  Has restitution

20    been paid?

21         MR. PELLEGRINO:  No, it has not.

22         THE COURT:  Was that part of the plea agreement that

23    it was going to be paid before sentence?

24         MR. PELLEGRINO:  It was.

25         THE COURT:  Thank you.

1        MR. SOLANO:  So I ask myself a number of questions in

2   Mr. Rizzi's case.  The first one is has Mr. Rizzi suffered as a

3   consequence of his actions in this case; in other words, has he

4   been punished to some degree before this moment here now.  The

5   answer to that is yes, which if I believe it is yes, the

6   question then becomes how was he punished and how has he

7   suffered as a consequence of his actions up to this point.

8        The final question for me is whatever that is,

9   whatever that punishment has been, is it sufficient to satisfy

10  all the factors in the Southern District guidelines and 3553

11  (a), or do we need something more.  For the reasons I am going

12  to submit to the court, I believe what he has gone through

13  already is sufficient to satisfy all those factors.

14       I think that I won't go through every single 3553 (a)

15  factor, but the two factors Mr. Pellegrino brings up are the

16  ones I suspect that the court is going to focus on the most,

17  which is for it to be an appropriate sentence as well as a

18  deterrent factor for Mr. Rizzi.

19       Because all the other issues with respect to whether

20  or not he needs any vocational training or educational

21  training, I think your Honor should be satisfied that he

22  doesn't need any of those.  In fact, when I submitted to the

23  court his work record from MDC, it shows that he is, by all

24  accounts, a hard-working person when he wants to be, and so I

25  don't believe that is an issue.

1        Also with respect to the effect it will have on his

2   family, I hope that the court recognizes that almost with

3   anyone, particularly with Mr. Rizzi having elderly parents, it

4   will have an effect on his elderly parents, have an effect on

5   his kids that are at an impressionable age right now as well as

6   the effect it has on Mr. Rizzi's health.  I know the court is

7   aware of Mr. Rizzi's back injuries from when he was a police

8   officer.

9        With respect to this issue of whether the sentence is

10  a just sentence and whether it acts as a deterrent, at a

11  minimum, your Honor, at a minimum Mr. Rizzi has spent the last

12  almost twelve months in the Metropolitan Detention Center.  He

13  was going into FCI Loretto, which my understanding is a low

14  risk -- low security detention facility compared to MDC.

15       I don't have to bore this Court with cases that stand

16  for the proposition that when someone is being detained in

17  places like the MCC and MDC because of sort of the way in which

18  the security is on those, the fact that you have limited

19  movement, you have limited access to educational programs, you

20  have limited visits, et cetera, et cetera, et cetera, some

21  courts have even used that to depart from guideline ranges and

22  given reduced sentences.

23       There is no question, Judge, at a minimum, as a result

24  of this case, Mr. Rizzi has spent the last twelve months in the

25  Metropolitan Detention Center.  I don't know if Mr. Rizzi will

1    bore you with what has happened there, what he has seen, what

2    he has gone through, what he has experienced, but I can tell

3    you, your Honor, it is much more than he would have ever gotten

4    if he was in Loretto.

5              For example, Judge, the simple issue of you get one

6    visit per week for one hour, that's it.  For the past twelve

7    months he has had one visit per hour, and many times he can't

8    visit with his kids because those visits are during school

9    hours.  Again and I want to be a hundred percent clear, Judge,

10   the only person to blame is Mr. Rizzi.  I am not in any way

11   saying it is not.  My comments, I don't want that to get lost.

12   He suffered the consequence of this because of his actions.

13             That is one.  I remember a time when there was a

14   stabbing in the MDC and they were locked down for 11 days.

15   They couldn't leave.  I know because I tried to visit him and I

16   couldn't.  The experience of having to do that for twelve

17   months, your Honor, is punishment in and of itself and

18   punishment that he is getting as a direct result of this case.

19   I think that is important, your Honor.

20             More than that, Judge, Mr. Rizzi is now a two-time

21   felon.  His credit is completely destroyed.  What I mean in

22   terms of his credit, he has a bank fraud conviction.  If he was

23   ever going to get any loan or work some business deal out later

24   on, that is all but gone.  He has got --

25             THE COURT:  My guess is the money laundering and

1    gambling didn't help.

2            MR. SOLANO:  Your Honor, the money laundering and

3    gambling absolutely didn't help, but if he had any chance in

4    any way under some circumstance, the bank fraud conviction put

5    the nail in that coffin.

6            I think the most important aspect of this, Judge, is

7    what has happened in the last 24 hours.  Because of the

8    questions of the court, Mr. Rizzi was expecting many other

9    people to be here supporting him, and as a result of what he

10   has had to disclose personally, I know his wife is not here, I

11   know many of his other family members are not here, and I don't

12   know whether or not he's going to be able to repair the damage

13   with his wife and whether or not that marriage is ever going to

14   stay intact.

15           He also has to explain to his kids also what he has

16   done.  Again nobody's fault but his own, but that is also a

17   consequence of this case.  At this point, as he sits here,

18   right, he is a person who has essentially lost most of his

19   financial ability.  He has lost most of his familial support.

20   He has spent twelve months in the Metropolitan Detention

21   Center, not to mention, your Honor, when he was arrested and

22   brought back to MDC, he spent eight days in the solitary

23   confinement in the transfer.  There is a number of other things

24   he had to go through to get to the MDC.

25           So these are the things that as he sits here today, he

1    has already experienced, right?  At this point that is what he

2    has experienced, so the question becomes, and the way I look at

3    it is your Honor can do whatever your Honor wants, your Honor

4    could run it concurrent or give him consecutive time, and the

5    way I look at it -- and not to belittle the decision the court

6    has to make -- if he hasn't learned his lesson yet, with all

7    those things that he has dealt with at this point, if he hasn't

8    learned that lesson yet, I don't know if eight more months is

9    going to do the trick.

10              I am not saying it is not possible it wouldn't.  I am

11   just saying I don't know if eight more months, essentially if

12   he ends up with eight more months in a low security prison,

13   whether eight more months will do the trick, Judge the question

14   becomes do need to do more?  If your Honor sentences him to

15   eight months consecutive time the way the government is asking

16   for, if your Honor goes to 14 months and runs it consecutive,

17   if your Honor goes over the guideline range, I won't argue to

18   you it would be unreasonable.

19              I would argue to you it would be more than necessary

20   to satisfy the factors in 3553 (a).  Because of that, Judge, I

21   will ask your Honor to consider sentencing Mr. Rizzi so

22   whatever the court wants or thinks it is necessary, but not to

23   sentence him to any additional time.

24              One final note, Judge.  I have known Mr. Rizzi now for

25   I think going on three years, and I can tell you --

1          THE COURT:  You represented him on the Eastern

2     District case?

3          MR. SOLANO:  I did.  I can tell you, and he probably

4     will not like this, the person I knew back then was a very

5     smug, proud and some people might say conceded person.  The

6     person that I met yesterday when I explained to him what was

7     happening and what he had to do with respect to his family and

8     what he has already suffered from is a completely different

9     person.  He has been humbled as I have never seen anyone else

10    be humbled from when I saw him from the beginning to when I saw

11    him last night in the MDC.

12          Again, Judge, I think it is the hardest thing that any

13    judge has to do is what is the appropriate sentence.  Judge,

14    based on everything I have said, everything that he has

15    suffered already, again all his fault, I don't think that your

16    Honor has to give him any more jail time to satisfy those

17    factors of 3553 (a).  As such, your Honor, I will ask that you

18    consider something that doesn't give him any more jail time.

19          Thank you.

20          THE COURT:  Thank you.  Mr. Rizzi, would you like to

21    be heard?

22          THE DEFENDANT:  I just want to say that I take full

23    responsibility for what I have done and the stupidest thing I

24    have ever done in my life, and these past twelve months at MDC

25    I have seen more violence than I have seen in 10 years as a

1    police officer.  I am broken, I really am.  I will never put

2    myself in this position again.

3            THE COURT:  Okay.  Let me just say that my life and my

4    job would have been considerably easier -- I see Mr. Monahan

5    and his attorney are in the courtroom today as well -- if you

6    two gentlemen had told the truth from the beginning so that the

7    probation officer would have had an accurate understanding of

8    what happened.

9            Instead I spent the better part of several days

10   reading the probation reports and trying to figure out what was

11   going on here because the story that is in the probation report

12   makes no sense, absolutely not, and that's why it only took a

13   handful of questions to get to the bottom line, which was this

14   was not what was revealed.  Your very heartfelt letter,

15   Mr. Rizzi, was simply not true.  You wanted a place for your

16   girlfriend.  You got your buddy to buy the house and then to

17   give back half of it.  That is what happened.  That is not what

18   is in the report.  So the fact that I have forced you to come

19   clean on what happened you don't get any points for.

20           I am required to consider the nature and circumstances

21   of the offense and the history and characteristics of the

22   defendant.  I'll start with the good part about Mr. Rizzi.  He

23   has two children and he has been married to the same woman for

24   about 16 years.  I don't know if that marriage is going to

25   continue, assuming that she now understands the existence of

1   his lady-friend.

2         Prior to being incarcerated, he ran a successful adult

3   entertainment shop in Staten Island.  He has a supportive

4   family or did have a supportive family and has been gainfully

5   employed most of his adult life.  Until being incarcerated, he

6   was a caregiver for his elderly parents.

7         Letters from friends indicates he is quick to help

8   when help is needed.  They characterize him as a good and

9   caring person.  Mr. Rizzi asserts his prior gambling arrest was

10  because he was a gambler himself, not because he was booking

11  bets.  He asserts he had a gambling problem, but according to

12  him, he was able to stop on his own after he was arrested.  He

13  has no substance abuse problems, although by self-report, he

14  may have ever overused percocet in the past.

15        The defendant was previously a New York City Police

16  Officer.  He left the force on disability arising from an

17  on-the-job injury.  In addition to his other sources of income

18  which I would note he did not disclose to Probation, he

19  collects $3,800 a month in a disability pension which is not

20  taxed.

21        The defense suggested his prior service as a police

22  officer is a positive or at best a double-edged sword.  Serving

23  as a police officer is an honorable profession, but in this

24  case, I think the only way to put it is Mr. Rizzi has defiled

25  his past honorable service.  He defiled it by being either, if

1    you believe him, a degenerate gambler, or if you believe the

2    essence of the PSR, major bookie.  He defiled it by running a

3    prostitution operation from which he illegally laundered funds,

4    and he defiled it by committing bank fraud.

5         I have heard no cogent explanation for his

6    participation in this crime.  The defense has now acknowledged

7    he was desperate to save his home theme that ran through the

8    materials that were presented in advance of sentence is not

9    true.  Even assuming there was some financial distress at some

10   point, he had lots of alternatives.

11        Just to mention a couple, he could have sold the condo

12   in Boca that he ended up forfeiting and used that money, or he

13   could sell the house legitimately and use funds he clearly had

14   from his legitimate job or from the illegal prostitution

15   operation to pay the deficiency.  Of course, if he had done

16   that, he would have needed another location from which to run

17   his prostitution operation.

18        Everything about this, including the fact he

19   transferred his interest in the Beach Avenue property for no

20   consideration into his wife's name says that this all has

21   nothing to do with it, there is something else going on here,

22   which I still believe there is something else going on beyond

23   just getting a place for his girlfriend to live.

24        Taking all of this into account, federal law requires

25   me to impose a sentence that is reasonable and no greater than

necessary to accomplish the goals of sentencing.  I have

considered all of the required sentencing factors.  Most

importantly, I'll start with the seriousness of the offense.

Bank fraud is unquestionably a serious offense.  The

amount of the fraud which is minimal was not the point.  The

scheme involved submitting fraudulent documents to two banks,

all in pursuit of reducing the mortgage by what was a nominal

amount.  He also, I would note, fraudulently received a grant

from the government that was intended for people who had no

money to move from houses that they were short-selling so they

could actually get out of the property.  That was not what

Mr. Rizzi needed.  So that was money that taxpayers had put up

for a good and noble cause that was taken by Mr. Rizzi.

This was a man who had hundreds of thousands in

unlawful income available to him.  I have consider the need to

promote respect for the law.  Mr. Rizzi has no respect for the

law, as demonstrated by the initial fictitious explanation for

this crime and by virtue of the fact that he seems to have been

sort of a one man crime wave since he left the Police

Department.

I have to consider the need to deter criminal conduct.

As you know, Mr. Rizzi, there are two aspects of crime,

specific and general.  In terms of general deterrence, the

message needs to be sent generally bank fraud needs not to be

tolerated.  There were mortgages upside down, people wanted to

1    get out from under them, but that doesn't make it right.  There

2    are also a lot of people who persevered, who hung in there with

3    their properties or managed to make a deal with the bank, pay

4    the deficiency and move on with their life.  They didn't all do

5    what you did, Mr. Rizzi.

6              In terms of specific deterrence, I think there is a

7    need to send a message to Mr. Rizzi that he has got to stop.

8    Assuming he was a clean cop, and I don't have any reason to

9    believe he wasn't a clean cop, I don't know what happened to

10   you.  You pledged your life to support and defend the

11   Constitution and the laws of New York, to help people.  Since

12   that time you have been a gambler, you ran a prostitution

13   operation and you committed bank fraud.  What happened?

14             I don't know if you think because you're a former cop,

15   you're above the law or what, but it has got to stop.  So

16   Probation recommended eight months consecutive to his Eastern

17   District sentence, three years of supervised release and no

18   fine.  They recommended no fine based on his inability to pay,

19   but I do not believe that is accurate.  He has acknowledged

20   that he is getting $50,000 in income every year even while he

21   is in jail, and I find it hard to believe that's the extent of

22   his income from the sex toys operation when he is out.

23             He previously owned half of the Beach Avenue location

24   which he transferred to his wife for no consideration.  He has

25   a Police Department pension of $3,800 a month.  He has more

1   than enough money to pay a fine.

2           Taking all of that into account, I am sentencing

3   Mr. Rizzi to a period of 14 months, consecutive to the term of

4   imprisonment imposed in the Eastern District, to be followed by

5   a term of supervised release of five years and a fine of

6   $30,000.  The court will consider terminating the period of

7   supervised release early, though not earlier than three years

8   if the defendant has no violations and the fine and restitution

9   are fully paid before that point.

10          There are mandatory conditions of supervised release.

11  The defendant must not commit another crime.  He shall not

12  illegally possess a controlled substance.  He cannot possess a

13  firearm or other destructive device.  He will be subject to

14  mandatory drug testing.  In addition to the standard conditions

15  of supervision, I am imposing the following special conditions:

16          The defendant must provide the Probation Office with

17  access to any requested financial information.  The defendant

18  must submit his person, residence, place of business, vehicle,

19  electronic devices or other premise under his control to a

20  search if the probation officer has a reasonable belief that

21  contraband or evidence of a violation of the conditions of

22  release may be found there.

23          Any search must be conducted at a reasonable time and

24  in a reasonable manner.  Failure to submit to search may be

25  grounds for revocation, and the defendant must inform any other

1    residents that the premises are the subject to search pursuant

2    to this condition.  The defendant must report to the nearest

3    Probation Office within 72 hours of release.

4          Starting 30 days from his release from prison, the

5    defendant must pay a thousand dollars a month towards his

6    financial penalties.  While in prison, he must comply with

7    Bureau of Prisons regulations regarding the amount to be paid.

8    The defendant will be supervised by the district of his

9    residence, and the defendant may not incur new credit charges

10   or open additional lines of credit without the approval of the

11   Probation Office unless he is in compliance with the

12   installment payment schedule.

13         The government is not seeking forfeiture.  Is that

14   right?

15         MR. PELLEGRINO:  Correct, your Honor.

16         THE COURT:  As agreed to in the plea agreement,

17   Mr. Rizzi, you're jointly and severally liable with your

18   co-defendant to pay $28,000 in restitution to Wells Fargo Bank.

19   I must impose a $100.00 special assessment.  Do you have any

20   requests for designation?

21         MR. SOLANO:  I do, your Honor.

22         THE COURT:  He was designated to.FCI Loretto.  Do you

23   want to go back there?

24         THE DEFENDANT:  If possible, I request MDC Cadre or

25   Fort Dix because --

1      THE COURT:  Look, I will request whatever you want.

2   MDC Cadre, you have to be less than a year left.  You want to

3   be close.  The other is Fort Dix?

4      THE DEFENDANT:  Yes.

5      THE COURT:  Mr. Rizzi, I am happy to request that.

6      As you know, Bureau of Prisons is responsible for

7   designations.  All I can do is request, but I will make the

8   request.

9      Mr. Rizzi, to the extent you have not given up the

10  right to appeal your sentence through your plea of guilty and

11  the plea agreement which you entered into, you have the right

12  to appeal.  If you're unable to pay the cost of appeal, you may

13  apply for leave to appeal in forma pauperis.  The notice of

14  appeal must be filed with 14 days of the judgment of

15  conviction.  Anything else?

16      Is there anything further from the government?

17      MR. PELLEGRINO:  Two things:  We have a proposed order

18  of restitution, if the court would like that;

19      Secondly, we move to dismiss all open counts.

20      THE COURT:  Are there any own counts?  I thought he

21  pled to the indictment.

22      MR. PELLEGRINO:  I believe there were two counts.  He

23  pled to Count 1.

24      THE COURT:  Count 2 is dismissed as to Mr. Rizzi.

25      Is there anything further from the defense?

1          MR. SOLANO:  Yes.  I think your Honor sentenced him to

2     five years.  I don't know if your Honor stated it was

3     concurrent or consecutive to three years?

4          THE COURT:  The supervised release is concurrent to

5     the term he would serve in the Eastern District.

6          Anything else?

7          MR. SOLANO:  No.

8          THE COURT:  Thank you, all.

9          (Court adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25